UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

| Present: The Honorable | CHRISTINA A. SNYDER |  |
|------------------------|---------------------|--|

| Catherine Jeang | Not Present | N/A |
|-----------------|-------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                                  Not Present

**Proceedings:**     (IN-CHAMBERS) - MOTION TO DISMISS PLAINTIFF'S CLASS
ACTION COMPLAINT (Dkt. 11, filed on AUGUST 28, 2023)

## I.     INTRODUCTION

Presently before the Court is defendant's motion to dismiss for lack of personal jurisdiction and failure to state a claim.  Dkt. 11.

On June 5, 2023, plaintiff Rebeka Rodriguez ("Rodriguez") filed a class action case in California state court alleging that defendant Aquatic Sales Solutions LLC ("Aquatic") violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Dkt. 1-A at 2.  On June 30, 2023, defendant removed the case to this Court.  Dkt. 1.  On August 4, 2023, defendant filed a motion to dismiss.  Dkt. 9.

On August 14, 2023, plaintiff filed an amended class action complaint alleging that defendant violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a) *et seq.*, by allowing a third-party to wiretap and eavesdrop on chat conversations taking place on defendant's website.  Dkt. 10 ("FAC").

On August 28, 2023, defendant filed the instant motion to dismiss for lack of personal jurisdiction and failure to state a claim.  Dkt. 11 ("Mot.").  On September 11, 2023, plaintiff filed an opposition along with a request for judicial notice.  Dkt. 13 ("Opp."), 13-4 ("RJN").  On September 18, 2023, defendant filed a reply and concurrently filed objections to plaintiff's request for judicial notice.  Dkt. 14 ("Reply"), 15 ("OJN").

On October 2, 2023, the Court reserved judgment on defendant's motion to dismiss pending the completion of jurisdictional discovery.  Dkt. 17.  Specifically, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

authorized jurisdictional discovery regarding the extent of defendant's interactions with California and potential records of conversations between defendant and California residents that were conducted through defendant's website. Id. at 7.

On November 7, 2023, plaintiff filed a notice of supplemental authority and attached several recent court decisions. Dkt. 20. On November 8, 2023, defendant filed an objection to plaintiff's notice of supplemental authority. Dkt. 21.

On December 22, 2023, plaintiff filed a supplemental brief in support of her opposition to defendant's motion to dismiss. Dkt. 22. On January 2, 2024, defendant filed a response. Dkt. 23.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

CIPA prohibits any person from (1) intentionally wiretapping; (2) willfully reading or attempting to read the contents of any message passed over wire or sent/received within California; (3) using or attempting to use information obtained through either of the aforementioned means; or (4) aiding or abetting someone in violation of the prior three bases for liability. See Cal. Penal Code § 631.

Defendant is a Delaware company that sells aquarium supplies, with its principal place of business in Golden Valley, Minnesota. FAC ¶ 3. It operates a website called www.bulkreefsupply.com ("Website") which has a chat feature. Id. ¶ 4. During jurisdictional discovery, defendant confirmed that 12.42% and 12.51% of its 2022 and 2023 sales, respectively, were made to California residents. Dkt. 22 at 2-3.

Plaintiff is a California resident who, within the last year and while physically in California, visited defendant's Website through her smart phone and had a brief chat conversation which included personally identifiable information ("PII"). Id. ¶¶ 2, 10.

Plaintiff alleges that defendant allowed a third-party company called Zendesk to eavesdrop on all chat conversations taking place on defendant's Website. FAC ¶ 7. Specifically, she alleges that defendant allowed Zendesk to "embed . . . code into the chat feature" such that "whenever a consumer chats via [d]efendant's Website, the chat is routed through Zendesk's servers [so that Zendesk may] simultaneously collect a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

transcript . . . along with other user data . . . for later access." Id. ¶ 9. She characterizes the code as "a type of automatic routing software" that allows Zendesk to "intercept" and "eavesdrop upon" private conversations that often contain PII. Id. ¶¶ 10, 19. On the other hand, defendant characterizes the software as merely a "vendor-provided software tool[] [that] enable[s] chat functionality." Mot. at 1. Allegedly, defendant "neither informs visitors of this conduct nor obtains their consent to these intrusions." FAC ¶ 10.

According to plaintiff, Zendesk uses the information from these chats for "targeted marketing campaigns." Id. ¶ 13. Zendesk also allegedly shares the chat transcripts with Meta, which in turn uses the information to "target advertis[ements] based upon[] user[s'] Website visits and interactions." Id.

Plaintiff contends that defendant has therefore violated CIPA by enabling Zendesk's interception and eavesdropping.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

## B.    Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a  cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

read in the light most favorable to the nonmoving party.  Sprewell v. Golden State
Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to
dismiss can choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth.  While legal conclusions can
provide the framework of a complaint, they must be supported by factual allegations."
Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service,
572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the
non-conclusory 'factual content,' and reasonable inferences from that content, must be
plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately,
"[d]etermining whether a complaint states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to draw on its judicial experience
and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary
judgment, a court cannot consider material outside of the complaint (e.g., facts presented
in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. &
Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom
Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court
may, however, consider exhibits submitted with or alleged in the complaint and matters
that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon
Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los
Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be
freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the
court determines that the allegation of other facts consistent with the challenged pleading
could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture
Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

Defendant moves for dismissal for both lack of personal jurisdiction and failure to
state a claim.  Mot. at 1-2.  The Court discusses each issue in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

**A.    Personal Jurisdiction**

The first issue before the Court is whether this Court has personal jurisdiction over defendant.  As stated above, the nature of the contacts between a defendant and the forum state determines whether personal jurisdiction is characterized as either general or specific.

Aquatic argues that plaintiff cannot establish specific jurisdiction.[1]  The court begins with the second prong of the specific jurisdiction analysis before proceeding to analyze the first and third prong.

>    1.    Whether Plaintiff's Claim Arises from or Relates to Defendant's Forum-Related Activities

"The second prong of the specific jurisdiction inquiry requires that a plaintiff's claims 'arise out of or relate to the defendant's contacts' with the forum."  Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1096 (9th Cir. 2023).  "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."  Id.

Plaintiff lists several of defendant's contacts with California.  In particular, defendant allegedly operates a Website with chat functionality that is accessible in California.  See FAC ¶ 2.  Defendant also "sells aquarium supplies and related accessories through its e-commerce website to consumers throughout the United States and in California."  Id. ¶ 3.  In 2022 and 2023, 12.42% and 12.51% of defendant's total sales were made to California residents, respectively.  Dkt. 22 at 3-4.

Plaintiff argues that her CIPA claim arises out of these forum-related activities.  She argues that the exercise of specific jurisdiction is appropriate "as long as the claim bears a substantial connection to the [defendant's] forum contacts[.]"  Opp. at 6.  She contends that a "substantial connection" exists between her claims and defendant's forum contacts via its Website because, "[i]f [d]efendant had not made its Website available to California residents, [p]laintiff's privacy-related claims . . . would not have arisen."  Id. at 7.

---

[1] Plaintiff does not appear to assert that the Court has general jurisdiction over defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

In reply, defendant argues that plaintiff has made conclusory allegations and "must show that her claims arise out of contacts that the *defendant himself creates* with the forum State, not contacts initiated by forum residents like [p]laintiff." Reply at 5 (emphasis added). Additionally, defendant argues that "[p]laintiff's claims do not 'arise out of' Aquatic's broader forum-related activities in the state (its website sales of reef supplies)" because "[t]here is no . . . causal relationship between Aquatic's reef supply sales and Rodriguez's wiretapping claim[.]" Dkt. 23 at 2-3. It argues that the Ninth Circuit rejected a similar argument in <u>Briskin v. Shopify, Inc.</u>, 87 F.4th 404, 415 (9th Cir. 2023), where the court held that "[t]o the extent [plaintiff] suggests that [defendant's] broader business actions in California set the wheels in motion for [defendant] to eventually inflict privacy-related harm on [her] in California, such a butterfly effect theory of specific jurisdiction would be far too expansive to satisfy due process."

The Court finds that plaintiff's claims "relate to" defendant's conduct in operating the Website *and* its sale of physical goods to California residents through the Website. The Website, and its accompanying chat feature, were accessible in California. The chat feature allegedly allowed consumers to "communicate directly with Defendant through the Website" while also allegedly "allow[ing] a third-party to wiretap and eavesdrop upon the private conversations" taking place through the chat feature. FAC at 4. The Website and chat feature therefore go to the core of plaintiff's CIPA claim.

Defendant's sales of physical goods to California also relate to plaintiff's claim. <u>Briskin</u> is inapposite for several reasons. First, it appears that the Ninth Circuit intends to rehear <u>Briskin</u> en banc and has vacated the three-judge panel opinion cited by defendant. <u>Briskin v. Shopify, Inc.</u>, No. 22-15815, 2024 WL 2148754, at *1 (9th Cir. May 14, 2024). Moreover, <u>Briskin</u> is distinguishable on its facts. In <u>Briskin,</u> the plaintiff brought suit against Shopify, a web-based payment processing platform that contracts with merchants nationwide, for allegedly obtaining the personal information of those merchants' customers. 87 F.4th at 409. In support of finding personal jurisdiction over Shopify in California, the plaintiff pointed to various business contacts between Shopify and California including "Shopify's contracts with California merchants, its Los Angeles 'store' that promotes merchant relations, its California fulfillment center," and its California employees and business registration. <u>Id.</u> at 413. Writing for the panel, Judge Daniel Bress held that plaintiff's claims did not arise out of these contacts because "[plaintiff's] claims have nothing to do with Shopify's brick-and-mortar operations in the state[,] [n]or do they relate to Shopify's contracts with merchants in California." <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

In contrast, here, plaintiff's privacy claims *are* related to defendant's sales to California. Defendant presumably offered the chat feature on its Website to facilitate consumer transactions by, for example, allowing potential consumers to ask questions about products or allowing consumers to seek assistance regarding products they purchased in the past. In other words, defendant operated the chat feature to drive sales to consumers, including consumers in California. For the purposes of personal jurisdiction, sales resulting from defendant's efforts to drive sales to California consumers are sufficiently related to claims arising from those efforts. See Mikulsky v. Bloomingdale's, LLC, No. 3:23-CV-00425-L-VET, 2024 WL 337180, at *5 (S.D. Cal. Jan. 25, 2024) (finding that, in a CIPA action for data collection on a defendant's website, the defendant's sales through brick-and-mortar operations in California were relevant to the personal jurisdiction analysis because the "the purpose of collecting the data [on the website] [was], at least in part, to support in-store operations").

Accordingly, the Court considers the Website and defendant's sales of goods to California when analyzing the purposeful direction prong of the specific jurisdiction analysis.

### 2. Purposeful Direction

Under the first prong of the specific jurisdiction analysis, plaintiff must establish that defendant "either purposefully availed [itself] of the privilege of conducting activities in California, or purposefully directed [its] activities toward California." Schwarzenegger, 374 F.3d at 802. Courts have interpreted "purposeful availment" and "purposeful direction" as distinct concepts. Purposeful direction analysis is generally used for claims sounding in tort, while purposeful availment analysis is used for claims sounding in contract. Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015). Defendant contends that the instant suit sounds in tort. Mot. at 6.

Courts in the Ninth Circuit analyze purposeful direction under the three-part "effects test" from the Supreme Court's opinion in Calder v. Jones, 465 U.S. 783, 787–89, (1984); Schwarzenegger, 374 F.3d at 803. "Under this test, the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell, 606 F.3d at 1128 (internal quotation marks and citation omitted) abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

Here, defendant argues that plaintiff has failed to establish that defendant committed an intentional act. It contends that plaintiff "does not plausibly allege a violation under CIPA" but rather merely alleges that "Aquatic's *third-party* secretly recorded [] conversation[s] in violation of CIPA." Mot. at 6 (emphasis added). Defendant also contends that plaintiff has failed to establish that defendant expressly aimed conduct at California. Mot. at 6-7. Defendant notes that "operating a nationally accessible website, without 'something more,' does not satisfy the 'express aiming' prong." Id. at 7. The FAC allegedly "contains no facts suggesting . . . targeting, given that any website chat use . . . appears to have offered an identical experience regardless of the forum of access." Id. at 8. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." Id. (quoting <u>DFSB Kollective Co. v. Bourne</u>, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012)). Defendant alleges that in <u>Keith Carroll and Rebeka Rodriguez v. The J.M. Smucker Company</u>, No. 3:22-cv-08952-WHA, 2023 WL 4053796, (N.D. Cal. Jun 15, 2023), a similar case "filed by the same plaintiff and represented by the same counsel," plaintiff "did not allege that the website targeted Californians or that [] Rodriguez purchased anything from the website." Id. at 9. Judge Alsup granted the defendant's motion to dismiss after finding that the defendant "ha[d] done no act and ha[d] consummated no transaction, nor ha[d] it performed any act by which it purposefully availed itself of the privilege of conducting activities in California relevant to this action." Id. at 9 (quoting <u>Carroll</u>, 2023 WL 4053796 at *4).

In opposition, plaintiff contends that specific jurisdiction exists based on defendant's Website. She asserts that the Ninth Circuit utilizes the "sliding scale" approach set forth in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997) to determine whether the operation of a website supports the exercise of personal jurisdiction. <u>See Cybersell, Inc., v. Cybersell, Inc.</u>, 130 F.3d 414, 418 (9th Cir. 1997). Under this analysis, courts consider the "level of interactivity and commercial nature of the exchange of information" that occurs on the website. Id. A passive website that "does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." <u>Zippo</u>, 952 F. Supp. at 1124. On the other end of the spectrum, an interactive website through which "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files" justifies a court's exercise of personal jurisdiction. Id. If a website falls somewhere in the middle, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

nature and quality of commercial activity that an entity conducts over the internet."
Cybersell, 130 F.3d at 419. Here, plaintiff argues that "[d]efendant's Website is highly
interactive and commercial because it enters into electronic contracts with California and
other states' consumers." Opp. at 2-3 (capitalization omitted). Moreover, the Website
allegedly "has no disclaimer excluding Californians from purchasing its products online."
Id. at 4-5. She distinguishes this case from Carroll, which "did not involve an online
store." Id. at 5.

In reply, defendant argues that plaintiff "conflates the 'purposeful direction' and
'purposeful availment' tests" by advocating for the application of the Zippo test. Reply
at 1-2. Zippo is allegedly applied as part of the purposeful availment test in contract
cases, whereas the purposeful direction test is the appropriate test for claims arising in
tort. Id. at 2. Regarding express aiming, defendant argues that its sales to California
residents are irrelevant because such sales "have nothing to do with" plaintiff's claims for
"alleged interception, eavesdropping and storing of chat transcripts of visitors on
Aquatic's website." Id. at 3-4. Defendant also claims that plaintiff fails to show that
defendant knew its actions were "more likely to cause harm in California than any other
forum." Id. at 5. It claims that the alleged harm would have occurred regardless of the
location from which plaintiff visited defendant's website. Id.

In her supplemental brief, plaintiff argues that, in Herbal Brands, Inc. v.
Photoplaza, Inc., 72 F.4th 1085, 1092-94 (9th Cir. 2023), the Ninth Circuit held that a
defendant "expressly aimed" its conduct at a forum if, "in its regular course of business,
[it] sells a physical product via an interactive website and causes that product to be
delivered to the forum" Dkt. 22 at 2 (citing). Jurisdictional discovery has revealed that
12.42% and 12.51% of defendant's 2022 and 2023 sales were made to California
residents, respectively. Id. at 2-3. Plaintiff contends that defendants' sales are not
"isolated" but rather part of "a genuine attempt to serve the market." Id. at 3 (quoting
Herbal Brands, Inc., 72 F.4th at 1095). In the alternative, plaintiff requests the
opportunity to conduct further jurisdictional discovery, including "further responses from
[d]efendant and/or . . . deposition of [d]efendant's corporate designee under Rule
30(b)(6) in order to ascertain [d]efendant's specific [dollar volume] sales figures for
California and nationwide." Id. at 6.

In its response, defendant argues that specific jurisdiction is "a claim-tailored
inquiry that requires an examination of the plaintiff's specific injury and its connection to
the forum-related activities in question." Dkt. 23 at 2 (citing Williams v. Yamaha Motor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

Co. Ltd., 851 F.3d 1015, 1022–23 (9th Cir. 2017)). It contends that "the activities relevant to the specific jurisdiction analysis in this case are those that caused Rodriguez's injuries: Aquatic's alleged retention of website chats obtained from wiretapping and eavesdropping of her electronic communications while she resided in California." Id. at 3. It again asserts that defendant's sales to California do not support personal jurisdiction because, here, the alleged tortious actions are *not* the sales themselves. Id. at 3-4. Thus, plaintiff must (and fails to) show that "Aquatic's website chat was designed specifically to target and attract Californians." Id. at 4. Defendant argues that, in Herbal Brands, the Ninth Circuit explicitly "cautioned that it would reach a different result where 'other internet activity'—unconnected to the sale and delivery of a physical product— 'is allegedly the source of personal jurisdiction.'" Id. (quoting Herbal Brands, 72 F.4th at 1095). Defendant argues that the Ninth Circuit's decision in Briskin v. Shopify, Inc., 87 F.4th 404, 409 (9th Cir. 2023), is directly on point. Dkt. 23 at 4. There, the court allegedly "distinguished Herbal Brands as being limited to specific injury stemming from the sale of product, not internet activity on a website." Id.

The Court finds that plaintiff's CIPA claim sounds in tort. See Swarts v. Home Depot, Inc., No. 23-CV-0995-JST, 2023 WL 5615453, at *3 (N.D. Cal. Aug. 30, 2023) ("Plaintiff's CIPA . . . claim[] sound[s] in tort"). Accordingly, under the first prong of the specific jurisdiction analysis, the operative question is whether defendant purposefully directed its activities towards California.

As defendant correctly noted, courts in the Ninth Circuit analyze purposeful direction using the Calder "effects test" and ask whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell, 606 F.3d at 1128 (internal quotation marks and citation omitted) abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

The Court finds that defendant has committed intentional acts. A defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Schwarzenegger, 374 F.3d at 806. Here, plaintiff alleges that defendant "operates, and/or controls the Website" and "sells aquarium supplies and related accessories through its e-commerce website to consumers throughout the United States and in California." FAC ¶ 4. She additionally alleges that defendant "offered an online 'chat' feature for consumers to communicate directly with [d]efendant through the Website." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                              **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

Furthermore, defendant "allowed a third party named Zendesk to embed its chat technology code into the chat feature offered on [d]efendant's Website." Id. ¶ 9. These all qualify as intentional acts.

The Court also finds that defendant "expressly aimed" its activities at California. While "operation of an interactive website does not, by itself, establish express aiming," "operating a website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." Herbal Brands, 72 F.4th at 1091-92. The interactivity of a website "can be relevant to the question of whether a defendant has done 'something more.'" Id. In some cases, "sales of a product to forum residents through an interactive website [may] constitute 'something more.'" Id. at 1092-93.

Regarding the question of whether Aquatic's sale of physical goods to California constitutes express aiming, the parties disagree as to whether Herbal Brands or Briskin applies. See 72 F.4th 1085 (9th Cir. 2023); 87 F.4th 404 (9th Cir. 2023). In Herbal Brands, an Arizona plaintiff brought suit against New York defendants who had made allegedly unauthorized sales of the plaintiff's products in Arizona using Amazon's online platform. Herbal Brands, 72 F.4th at 1088. The Ninth Circuit held that, when a defendant, "in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." Id. at 1093. The court reasoned that "[w]hen an online sale occurs as part of a defendant's regular course of business, it 'arises from the efforts of the [seller] to serve directly or indirectly[ ] the market for its product . . . ,' and the defendant "should reasonably anticipate being haled into court" where the product is sold." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In Briskin, as discussed above, the plaintiff brought suit against Shopify for allegedly obtaining the personal information of consumers who completed transactions on Shopify's merchant-customers' websites. 87 F.4th at 409. California-based retailer IABMFG was one such merchant that used Shopify's services, and Briskin made a purchase on IABMFG's website without knowing that "it was Shopify's e-commerce platform that was operating behind the scenes to facilitate [his] purchase." Id. The Ninth Circuit initially affirmed the dismissal of the case for lack of personal jurisdiction, holding that "to establish the 'something more' needed to demonstrate express aiming in suits against internet platforms, . . . the plaintiff must allege that the defendant platform

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title    | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

has a 'forum-specific focus.'" Id. at 419-20. "What is needed [] is some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state which permits the conclusion that the defendant's suit-related conduct 'create[s] a substantial connection' with the forum." Id. at 420. The court distinguished Herbal Brands as applying only to cases where the source of personal jurisdiction is the "online sale[] of physical products" as opposed to "other [unrelated] internet activity." Id. at 422. Notably, Shopify's only business was providing payment services to its merchant-customers; it did not sell its own physical products.

As the Court previously recognized, the Ninth Circuit has vacated the three-judge panel opinion in Briskin and will be rehearing the case en banc. Thus, Briskin is inapposite. Moreover, the Court finds that Briskin is again distinguishable from the instant case. There, defendant Shopify contracted with customer-merchants to facilitate a particular function on the merchants' websites (specifically, the ability to process online purchases). Briskin, 87 F.4th at 409. The Briskin court focused on the propriety of jurisdiction over entities providing website functionality to *other* merchant-customers, rather than the propriety of jurisdiction over the *merchant-customers themselves*. See id. at 421 (noting that the opinion "say[s] nothing of suits that plaintiffs could likely bring against California merchants in California, who could in turn seek relief against Shopify, as appropriate").

Here, Briskin's rationale might apply if plaintiff had brought her suit against Zendesk, because Zendesk serves a similar role as Shopify i.e., a service-provider/facilitator for merchant-customers' websites. Zendesk's product is allegedly "a type of automatic routing software that automatically acquires and transmits user chat communications to Zendesk" and is "embed[ded] . . . into the chat feature offered on [d]efendant's Website." Id. ¶ 10. However, plaintiff has only named Aquatic (i.e., Zendesk's merchant-customer) as the defendant.

Thus, the instant case more closely resembles Herbal Brands, where a merchant sells physical products via an interactive website. As the Ninth Circuit recognized there, "an interactive website plus 'something more' constitutes 'express aiming.'" Herbal Brands, 72 F. 4th at 1091 (capitalization omitted). In Swarts v. Home Depot, Inc., No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023), the Northern District of California confronted a CIPA case with similar facts and found that the court had personal jurisdiction based on the defendant's sales to California and the Ninth Circuit's reasoning in Herbal Brands. Id. at *4 In Swarts, the plaintiff brought a putative class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

action against Home Depot alleging that Home Depot recorded chat conversations on its website between visitors and customer service representatives.  Id. at *1.  Swarts pled that his chats concerned "inquiries related to home improvement products he had purchased, whether those products could be exchanged, and pending orders for products which were available for sale on [d]efendant's website."  Id. at *4.  The court held that Home Depot had thereby purposefully directed its conduct at the forum state by "s[elling] a physical product to [plaintiff] via its interactive website."  Id.

So too here.  Defendant operates an interactive Website with a chat feature, and its "sales of products to [California] residents are the requisite 'something more.'"  Herbal Brands, 72 F. 4th at 1092.  In 2022 and 2023, 12.42% and 12.51% of defendant's total sales were made to California residents, respectively.  These facts are sufficient to suggest that defendant expressly aimed its conduct at California.[2]

Finally, the Court finds that defendant caused harm that it knew was likely to be suffered in the forum state.  "[T]his element does not require that the 'brunt' of the harm be suffered in the forum, . . . and . . . may be established even if 'the bulk of the harm' occurs outside the forum."  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010) (citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006)).  Here, defendant "was aware that it was recording its online chat conversations with customers, which could foreseeably cause harm in California."  Swarts, No. 23-CV-0995-JST, 2023 WL 5615453, at *3.

---

[2] The Court additionally finds that Carroll v. J.M. Smucker Co., No. 22-08952 WHA, 2023 WL 4053796 (N.D. Cal. June 15, 2023), is distinguishable.  For one thing, Judge Alsup did not have the benefit of jurisdictional discovery when deciding Carroll.  Id. at *5.  Additionally, Carroll is distinguishable on its facts.  There, the allegedly problematic website feature was a "Facebook Tracking Pixel" that "gather[ed] website visitor data to facilitate later targeted advertising."  Id. at *1.  The website itself "d[id] not provide any direct means for purchasing [products, but rather] simply provide[d] information on the various products manufactured by the defendant."  Id. at *4.  In contrast, here defendant's Website offers an interactive chat feature designed to facilitate and drive sales to consumers.  Consumers in California could and did purchase products *directly from the Website*.  Thus, the Court finds that the instant case is more analogous to the chat feature at issue in Swarts rather than the Pixel feature in Carroll.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

Accordingly, the Court finds that defendant purposefully directed its conduct towards California.

> 3.    Reasonableness

Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp., 471 U.S. at 476–78, 105 S.Ct. 2174). Defendant does not appear to argue that the exercise of jurisdiction would be unreasonable.

Accordingly, the Court **DENIES** defendant's motion to dismiss for lack of personal jurisdiction. It now turns to defendant's remaining arguments under Rule 12(b)(6).

**B.    Failure to State a Claim**

Section 631(a) creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";

> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";

> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title    | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

Javier v. Assurance IQ, LLC, 649 F.Supp.3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

Defendant argues that plaintiff fails to state a § 631(a) claim. Mot. at 9. Plaintiff responds that "defendant's *chat provider* violated the first, second, and third clauses of Section 631(a)" which means "the fourth clause is actionable against defendant." Opp. at 7, 19 (capitalization omitted) (emphasis added). Thus, plaintiff appears to limit her claim against defendant to a violation of the fourth clause of § 631(a) for "aid[ing] . . . or permit[ting]" Zendesk's alleged violation of the first three clauses of § 631(a). The Court proceeds to address only the arguments regarding this theory of liability.

      1.      <u>Whether Zendesk is a Third-Party Eavesdropper</u>

As a threshold matter, defendant argues that "a company's use of a website vendor does not constitute eavesdropping under Section 631 where the vendor is a tool, agent, or extension of the company itself." Mot. at 19 (citing Graham v. Noom, Inc., 533 F. Supp. 3d 823 (N.D. Cal. 2021)). It contends that, here, "Zendesk's only functions were to ensure the functionality of the chat feature to create and store chat transcripts that can later be provided to Aquatic." Id. at 20. It additionally argues that "[p]laintiff's remaining allegations concerning Meta . . . should be disregarded entirely, as they are nothing more than conclusory statements lacking any plausible factual support or connection to Aquatic." Id. at 20. Specifically, defendant claims that "[s]imply alleging that [defendant] discloses certain information to Meta is not enough to establish aiding and abetting." Id.

In opposition, plaintiff argues that "multiple federal decisions have recognized that a [third-party] software provider can violate Section 631(a)." Opp. at 10 (capitalization omitted). She points specifically to the Ninth Circuit's decision in In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 607 (9th Cir. 2020), as well as the federal district court decisions in Saleh v. Nike, Inc., 562 F. Supp. 3d 503 (C.D. Cal. 2021), and Javier v. Assurance IQ, LLC, 649 F. Supp. 3d 891 (N.D. Cal. 2023). Plaintiff argues that these cases "reveal[] a clear disagreement amongst district courts in the Ninth Circuit regarding the applicability of the so-called 'extension' [] requirement." Opp. at 13.

In reply, defendant argues that "an aiding and abetting theory requires [p]laintiff to allege . . . [that a] third-party analyzed or used the data *independently*, and not for the benefit of Aquatic." Reply at 8 (citing Licea v. Am. Eagle Outfitters, Inc., 2023 WL 2469630, at *8 (C.D. Cal. Mar. 7, 2023)). It additionally contends that "conclusory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

allegations that a third-party 'monetized' or 'harvested' data do not suffice to show that the [third-party] made some independent use of the data at issue." Id. at 9 (citing Byars v. Hot Topic, Inc., 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023)). Here, defendant claims that plaintiff does not specify any "business or contractual relationship . . . between Zendesk and Facebook/Meta," and does not allege "whether or not [any targeted] advertising [that may be occurring] is on behalf of Aquatic or on behalf of third-parties." Id.

"Two basic principles of Section 631 liability are undisputed. First, if a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong)." Javier, 649 F. Supp. 3d at 897–98 (citing Ribas v. Clark, 38 Cal. 3d 355, 361–62 (1985)). "Second, a party to a conversation can record it without the other party's knowledge without incurring Section 631 liability." Id. (citing Rogers v. Ulrich, 52 Cal. App. 3d 894, 899 (1975)). With these principles in mind, other courts have decided analogous CIPA cases by asking whether a third-party software/service provider is akin to "a tape recorder held by [the party to the conversation], or [rather akin to] an eavesdropper standing outside the door?" Yoon v. Lululemon USA, Inc., 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021).

Courts in this Circuit appear to be split on this question. In one line of cases, courts have held that "software providers [of this nature] are third parties within the meaning of Section 631." Javier, 49 F.Supp.3d at 899; see Revitch v. New Moosejaw, LLC, No. 18-CV-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (finding that a marketing company and data broker that embeds computer code onto participating websites to spy on visitors as they browse "acted as a third party"); In re Facebook, Inc., Internet Tracking Litig., 956 F.3d at 607-08 (holding that Facebook, when it intercepted communications between a user's browser and a third-party website, was not as a matter of law a "party" to that communication); Saleh v. Nike, Inc., 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) ("Here, . . . FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike.").

In the second line of cases, courts have held that "software vendors [of this nature] are 'extension[s]' of the websites that employ them, and thus not third parties within the meaning of the statute." Javier, 49 F. Supp.3d at 899. In Graham v. Noom, Inc., Magistrate Judge Beeler found that FullStory (a software vendor) "is not a third-party eavesdropper" and "is an extension of Noom" because it merely "provides a tool – like

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

[a] tape recorder . . . – that allows Noom to record and analyze its own data in aid of Noom's business." 533 F. Supp. 3d 823 (N.D. Cal. 2021). She "distinguished Moosejaw and In re Facebook because both of the third parties in those cases were alleged to have used the data for their own benefit and not for the sole benefit of the party to the communication." Javier, 649 F. Supp. 3d at 899. Thus, in this second line of cases, "a key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way." Williams v. What If Holdings, LLC, No. C 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).

The Court finds that, regardless of which line of cases applies, plaintiff has sufficiently alleged that Zendesk acted as a third-party eavesdropper. In her first amended complaint, plaintiff alleges that Zendesk "uses it record of Website users' interaction[s] with [d]efendant's chat feature for data analytics and marketing/advertising to consumers," including by "provid[ing] [intercepted chat transcripts] to Meta through 'integration.'" FAC ¶¶ 15, 17. As such, Zendesk allegedly "does more than merely provide a storage function for Website users' chat communications with [d]efendant" and is allegedly "more than the proverbial 'tape-recorder' in the hand of [d]efendant." Id. ¶ 17. Rather, plaintiff alleges that Zendesk "profit[s] from secretly exploiting the chat data through targeted social media advertising" in partnership with Meta. Id. ¶ 16. Thus, the Court finds that plaintiff has plausibly alleged that Zendesk is a third party under Section 631. The Court proceeds to analyze whether plaintiff has plausibly alleged that Zendesk violated any of the first three clauses of Section 631 such that defendant may be plausibly held liable for violating the fourth clause.

2.     Whether Zendesk violated § 631(a)

a. Subsection (a)(1)

Section 631(a)'s first clause imposes liability on "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any *telegraph* or *telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal *telephonic* communication system." Cal. Penal Code § 631(a) (emphasis added).

Defendant argues that "[c]ourts have made clear that the 'first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

of the internet.'" Mot. at 14 (quoting <u>Williams v. What If Holdings, LLC</u>, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022)). The Court agrees, and plaintiff appears to concede this point as well. <u>See</u> <u>Swarts</u>, No. 23-CV-0995-JST, 2023 WL 5615453, at *6 ("Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet"); Opp. at 8-9 (arguing that the FAC "plausibly alleges that the chat provider has violated the *second* and *third* clauses of section 631(a)" but not the first) (emphasis added). Accordingly, plaintiff has not adequately pled that Zendesk violated the first clause of Section 631(a).

   *b. Subsection (a)(2)*

   Section 631(a)'s second clause imposes liability on any person who "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is *in transit*." Cal. Penal Code § 631(a) (emphasis added).

   Defendant argues that "[p]laintiff fails to allege that any interception occurred while *in transit*." Mot. at 17 (emphasis in original). While plaintiff alleges that Zendesk records and maintains chat transcripts on Aquatic's behalf, defendant contends that "the 'recording' of a chat communication cannot be achieved until *after* the communication reaches its intended recipient," at which point "the communication is no longer in transit." <u>Id.</u> Thus, defendant claims that plaintiff's "conclusory allegations that her chat messages were somehow intercepted *while in transit* are factually unsupported allegations." <u>Id.</u>

   In opposition, plaintiff argues that "[n]umerous courts . . . have recognized that automatic routing software can satisfy the contemporaneous transmission requirement of either the Wiretap Act or the second clause of section 631(a)." Opp. at 16 (citing various circuit and district court cases).

   In reply, defendant argues that "merely slapping a new label on the alleged software code – 'automatic routing software' – does not cure [p]laintiff's conclusory allegations that [p]laintiff's chat communications were allegedly intercepted during transmission." Reply at 7. They also note that plaintiff cites repeatedly to "session replay technology" which "is in no way analogous to the chat software actually alleged in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | | Date | May 29, 2024 |
|---|---|---|---|---|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | | |

the FAC." Id.  It again argues that plaintiff "fails to include any *factual details* in her FAC to support [the claim that] any communications were intercepted contemporaneously with transmission." Id. at 8.

The Court finds that plaintiff has adequately pled that Zendesk violated the second clause of Section 631(a) by intercepting her communications while they were in transit. Plaintiff specifically alleged that "Zendesk acquires Website visitors' chat communications by first having its software route them to Zendesk's own computer servers that it owns, controls, and maintains.  The secret code enables and allows Zendesk to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications." FAC ¶ 10.  These allegations, particularly the allegation that the chat communications are routed *though* Zendesk's servers after visitors send their communications, are sufficient to suggest that the alleged interception occurs while the communications are still in transit.

*c.  Subsection (a)(3)*

Section 631(a)'s third clause imposes liability on any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Cal. Penal Code § 631(a).

Plaintiff argues that, "[g]iven that the FAC alleges a plausible violation of the second clause[] by [Zendesk], the Court should hold that the FAC sufficiently alleges that [Zendesk] also violated the third clause by using 'in any manner, or for any purpose' [p]laintiff's chat communication with Defendant." Opp. at 19.

The Court finds that plaintiff has adequately pled facts suggesting that Zendesk used the information it obtained from plaintiff's communication.  Specifically, plaintiff alleges that "Zendesk [] provides[] [intercepted chat transcripts] to Meta through 'integration'" for "profit." FAC ¶¶ 15-16.

Thus, because plaintiff has adequately pled facts suggesting that Zendesk violated the second and third clauses of Section 631(a), plaintiff has also adequately pled facts suggesting that defendant violated the fourth clause by aiding and abetting Zendesk's conduct.  Accordingly, the Court **DENIES** defendant's motion to dismiss for failure to state a claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-05198-CAS-Ex | Date | May 29, 2024 |
|----------|----------------------|------|--------------|
| Title | REBEKA RODRIGUEZ V. AQUATIC SALES SOLUTIONS LLC | | |

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to dismiss.  Defendant shall file an answer on or before June 20, 2024.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|----|----|
| Initials of Preparer | | CMJ | |